The next case on for argument is Seepersad v. Sessions. Morning. Morning. May it please the court, my name is Ryan Lattimore. I represent the petitioner in this case, Ashram Seepersad. He's a 52-year-old native and citizen of Trinidad and Tobago, entered the United States in September of 1995. In April of 2001, he adjusted status to lawful permanent resident, based upon marriage to his U.S. citizen wife. In August of 2002, he was convicted in a United States district court, one count of conspiracy to fraudulently use credit cards, which was a felony. He was sentenced to three years probation, $73,000 in restitution. He completed both of those items successfully and has never been in any trouble since 2002. What caused him to get on the radar screen of DHS, though? It was 13 years before he was convicted, and then they tried to remove him. What triggered this? I'm not sure if this is in the record or not, but I believe he applied for citizenship. I don't think it immediately triggered it, but I think that ultimately triggered it. Although, I do see in many cases absolutely nothing triggering it. I don't know if ICE runs background checks routinely through the federal system to find these old convictions and then bring them up 13 years later, even though the person's been living normally or not, but I see it both with a trigger and without any known trigger. He completed his sentence fully, no issues. March of 2015, he was served with a notice to appear, alleging that he was an aggravated felon for committing a fraud crime in which the loss was $10,000 or more. He was also charged for being convicted of a crime involving moral turpitude within five years of being admitted as a lawful permanent resident. He went before the immigration court. He presented a couple different defenses. One was a standalone 2-on-2-H waiver, which was pre-termitted by the immigration judge. One was withholding of removal based upon the particular social group of wealthy Americans. Which hasn't been recognized as a social group by the agency, right? No, that's correct. Okay. Yeah. He also presented the defense of protection under the convention against torture. All of those were denied. He appealed all of those to the board, and the board issued its own decision. But for similar reasoning, once again, pre-termitted the 2-on-2-H waiver, denied withholding of removal on two basis. Can I just ask you about the 2-on-2-H waiver? Yeah. It required him not only to apply for that, but also apply for adjustment of status. That seems to be the big issue for somebody who's already here in the States, right? That is the big issue, correct. What would he apply for? He's already a LPR, right? Yep. So what status would he need to apply for to meet that qualification? You reapply for lawful permanent resident status. Why didn't he do it? I'm sorry? Why wouldn't you just do it? He's already got that status. He doesn't have the qualifying relative anymore to sponsor the visa. It was based upon his marriage to a U.S. citizen back in 2001. That relationship no longer exists. So he would love to, but he had no basis. He would have to have a U.S. citizen lawful permanent resident wife. He would have to have a child over 21 years of age who was a U.S. citizen lawful permanent resident in order to . . . I mean, to get super technical, he had . . . I'm sorry. Either one or the other or both? One or the other. And his mom is a lawful permanent resident 88 years old, so technically she could apply for a visa for him even. But last time I looked at the visa bulletin, I think it's like a seven-year wait or something like that. So 2015 plus seven years would be when he could have a visa available to apply for this waiver. So the timing doesn't work out sometimes, too. So he effectively lost his LPR status because of his divorce, probably, right? Is that what happened? No, no, no. He would remain to be a lawful permanent resident as long as he . . . There are all kinds of requirements. I wasn't representing him back then, so I don't know if he had a conditional green card and he removed the conditions and became a full green card holder or whether he just started out with a full green card at that point. But as long as they didn't find the marriage was fraudulent and that was never alleged or anything like that, then, no, even if he gets divorced, he retains his lawful permanent resident status. But he loses it now. Because of the removal proceedings. And I think technically he either loses it when the board issues its final decision or he loses it when he's actually removed from the country. I don't remember which one actually triggers the . . . But his application would likely be denied because he doesn't have that qualifying factor anymore. I'm sorry. Could you rephrase that? So it seems that where the rubber hits the road here is that if you're in the United States, you have to do two things. You have to apply for the 212H waiver plus you have to file this application for adjustment of status. But if you're outside the United States, you just have to file for the 212H waiver. Right? If you're a returning lawful permanent resident, that's correct. So the analogy that I would use would be you have Mr. Seepersod and then his twin. And let's assume that they've done everything on the exact same timeline. And I practice just in this area, so this is how I see this come up the most. Okay? Mr. Seepersod is in the United States. He never thought this conviction was going to trigger any sort of immigration consequences. Thirteen years later, oh hey, you're an aggravated felon, mandatory detention, reduced defenses of deportation. He gets divorced in those 15 years, so the qualifying feature of his LPR is now gone, but he still retains it. He still retains his status, but he can't reapply for lawful permanent residence based upon that relationship after the divorce. The legal basis is gone. Let's say his- He can't be removed because even though he's now divorced, he's still an LPR. That's correct. Right. Yeah. And let's say his twin, exact same situation, got divorced. Everything happened the exact same. But this twin, and this is how I most often see this arise, this twin decides to go on a vacation to Jamaica. Goes to Jamaica, has a great two weeks, flies back into the U.S., and that's the triggering event. Customs and Border Protection says, we ran a background check on you coming back in. You have this aggravated felony conviction from 13 years ago. We're going to place you in removal proceedings. The same removal proceedings that Mr. Seepersod got placed in. However, the way that they're different is that that person went to Jamaica and comes back, they don't need to reapply for lawful permanent residence status. They don't need to file a visa. It doesn't matter whether they're married, unmarried at that point. They can just file a 212H waiver and have it adjudicated by an immigration judge. And if granted, they're admitted to the United States and retain their lawful permanent residence status. They completely avoid having to reapply for the green card or a visa by going on vacation and coming back. And that's how they get discovered versus someone 13 years after this conviction going and trying to get their citizenship, let's say. Or sometimes not doing anything at all. It makes a difference because the first twin, Mr. Seepersod, will likely not get LPR status with his new application because he doesn't have a qualifying feature, right? That's, well, the respondent argues that it's impossible and that's why the immigration judge pre-terminated the application for the 212H waiver. Legally speaking, it may or may not be impossible to apply without a visa, a relative that can sponsor you for a visa, an accompanying adjustment application is what it technically would be called. Theoretically, that's impossible to do in the United States where if you just go on a vacation and come back to the border, even though you get placed in removal proceedings, you're treated differently because you're inadmissible. So you're not in the United States. Versus removable. Inadmissible, you're running up against the border and bouncing off of it. Removable, they're trying to push you out of the country. So that little distinction right there, which doesn't seem exactly fair, can be the difference between someone like this who very likely would have been granted the 212H waiver if he was just married to a different U.S. citizen or the same U.S. citizen or had a 22-year-old child who could sponsor him as an immediate relative, likely would have been granted the waiver and be fine and live the rest of his life as a lawful permanent resident here in the United States or would have been fine if he would have gone on vacation and came back and got caught at the border, and then he could just apply for the status. There's a real risk that your client would not get a new adjustment of status. I'm sorry? There's a real risk, though, that because he has to apply for adjustment of status again, there's a risk he won't get it. I wouldn't say that. Legally speaking, the 212H waiver has more strict requirements than an adjustment of status application. So if you would be granted the waiver, then you could logically conclude he would have been granted the readjustment of status. And I've readjusted status for lawful permanent residents who have been convicted of aggravated felonies before. I mean, it's certainly possible to do, and I wouldn't consider it a rare thing, especially in a case like this where you've got a guy who's a very low-level member of a retail fraud conspiracy. What's the big deal, then? Why didn't he just file for adjustment of status? Because he doesn't have anyone to apply for a visa for him. His wife applied for the visa to get him lawful permanent status to begin with, and that's the only person in his life that meets the requirements of an immediate relative to apply for him, and that relationship no longer exists. So it's sort of like pulling the rug out. There's just no legal basis at that point for him to reapply for a visa. And like I said, technically his mom, an 88-year-old lawful permanent resident, could apply for him, but the wait is seven years right now for the visa to get current for him to be processed. That would be true even if he were married, right? No, no, no. If you're married, it gets processed immediately. Oh, okay. So the current wait times are four to six months. All right. Thanks, Mr. Lattimore. You've reserved three minutes for rebuttal, and we'll hear from Mr. Ramnitz. May it please the Court, Your Honors, Tim Ramnitz on behalf of. . . I think the podium comes up a little bit. If there's a button right beside your right hand there, just. . . That's it. It's up as high as it goes. All right. Can you hear me okay? Yes, yeah. Okay. May it please the Court, Your Honors, Tim Ramnitz on behalf of the United States Attorney General. This immigration case petitioner brings two issues before the Court, one being the agency's denial of his applications for the holding removal and cap protection. I believe this issue is foreclosed, or at least jurisdiction is severely prescribed by 1252A2C, which is the criminal review bar. In this case, petitioner has conceded removability as an aggravated felon. That limits the Court's jurisdiction to questions of law and constitutional claims. Petitioner has not explained what question of law or constitutional claim he raises in conjunction with denial of his applications for the holding removal and cap protection. The second issue petitioner brings before this Court is whether or not the Board warrants deference on its interpretation of Section 212H. The Board has a published decision, matter of rebus, and a regulation at 1245.1F where it's interpreted 212H as requiring for an alien within the United States who is in removal proceedings to have an adjustment of status application before having access to this waiver. What's the point of it, though? It's obvious that there's a big difference between somebody coming back into the United States and somebody just here and wants to get a 212H waiver. What's the reason for it? There are three reasons. And so to start with is that the case petitioner relies on principally matter of Sanchez, which is a 1980 Board decision. And at one point, before these amendments to the immigration statutes in 1990 and 1996, the Board had a policy where it could do legal fiction, nunk-pro-tunk relief, for an individual that was within the United States and wanted to pursue a 212H waiver. But this was before changes to the Immigration Act. So in 1990, Congress changed the wording of 212H to state that it's only available to an applicant for visa admission or adjustment of status. Subsequently, ARERA did away with the Flutie doctrine, which was about physical entries to the United States changing how an individual is placed into proceedings. That was back in the old regime of exclusion and deportation proceedings on one end and the other. There was one proceeding, removal, and the difference being whether or not the alien is seeking admission or whether or not the government is seeking to deport that alien. And those are the two different statutory regimes at play now. So with the new definition, the Board found there's no more room for allowing someone to have a waiver on 212H outside of admission. So admission is the two examples for a lawful permanent resident that Petitioner's Council cited. At the border, they're coming into the United States and they are subject to a CBP check. And they can find a criminal conviction. And under the new regime after ARERA, under 1101A43CV, a returning lawful permanent resident can be treated as an applicant for admission because of certain qualifying criminal offenses. At that point, they can seek a 212H waiver because their criminal activity has come to the government's attention and they are seeking at the border to be readmitted. I'm still not following you. Can you just tell me why it is that you have this additional requirement for someone who's still in the United States to apply for adjustment of status and you don't have it for somebody who's coming into the United States? What's the reason for it? There must be some reason they changed the statute. What is it? They changed the statute because of the old Flutie doctrine and how it was premised on physical entry into the United States. Now it turns on either the government seeking to deport someone or the alien seeking admission to the United States, which are two different things. So in this case, government sought to deport Mr. Seepersad. He was not seeking admission to the United States, but he can. Congress allows him to seek admission through adjustment of status application. And this is what you'll see in these published decisions. I got that, but why? That's the question is why. Why is there the additional requirement of having to apply for adjustment of status for an LPR who's already gotten an LPR designation, who stays in the United States and you find a criminal conviction, but you don't have that requirement for someone coming in? All you have is a 212H requirement. Why is that not important for someone coming into the United States, but it is for someone who's already here with his status already adjusted? Okay. So this is essentially an equal protection argument. Why is there a rational basis for this difference? Yeah. And the 11th Circuit, and this was a decision cited in the government's brief. No, just tell me what in your mind. These are what the government suggests are rational basis. Yeah, what's the rational basis? I think it's easiest to read them because the decision lays them out very well. So the 11th Circuit in Revis, which was their published decision affirming this published board decision, they said there are five rational basis for this policy. First, Congress might have wanted to ensure that dangerous people, those convicted of crimes, remain outside the United States while their applications for discretionary relief, this 212H waiver, are considered. The second rational basis. That's the people who are outside of the United States. That's people seeking entry at a point of entry, yes. Okay. So that doesn't apply to the first twin? No. Okay. Second, Congress might have wanted to deter these aliens from attempting to fly under the radar in the event their waiver is ultimately denied. And now that applies to this twin. That is an individual who has remained in the United States, had a criminal conviction, and never brought that criminal conviction to the attention of the government. They have flied under the radar until they want something from the government. In this case, it was an application for citizenship. Then they bring this conviction to the government's attention, and this is the rational basis here is that they don't want to encourage people to just fly under the radar after they get convicted of a serious crime. But that doesn't really apply to the second twin who was here in the United States, went out on vacation, and then came back. Well, that was the first rational basis, where he is seeking admission at the port of entry. But he was already here. Well, okay. He was already here flying under the radar. You know, this is sort of like there used to be a business in the old days before you guys were born where, and maybe even before I was born, but where they would set up Mexican divorces, and you'd fly down, have a vacation in Mexico, and get divorced. Maybe they ought to set up sort of, you know, go to Jamaica and come back in so that you can avoid the internal reporting requirement. Well, that is one of the rational basis, again, that there's further rational basis that the 11th Circuit got to. And as a third, Congress might have believed to create an incentive for aliens to self-deport. And that would be that situation where they deport themselves out of the country and then present themselves at the border for admission with their conviction. So either way, you're bringing your conviction to the attention of the government instead of simply flying under the radar. And this seems to fit what Congress wanted with this waiver. But you're doing that in the same, you know, the second twin is doing that here. The second? However it got brought to the attention of the government, it was brought to the attention of the government. There's no functional distinction, it seems to me, between going out and coming to the border and they pull it up, or they pull it up and then they say, hey, you've done this. I mean, either way, the government's informed, whether because he's trying to come in. What if they get on, what is it, Natus? Yeah, what if they get through the border on Natus again? They're still flying under the border. They haven't brought it to anybody's attention. They haven't. The government's discovered it at the border or the government's discovered it when they went out and did a sweep or whatever the heck they did. Either way, they have to seek admission at that point. They have to request from the government this admission which is 1182, which is on different grounds for miscibility, which is a requirement for adjustment of status, and that seems to be what Congress intended with this language by specifically adding in admission, visa, or adjustment of status to the only way this waiver is available to an individual. Okay. That's three. So the court goes on to say, fourth, in cases where an alien either remains outside our borders or applies for an adjustment of status while within our borders, the alien must provide immigration authorities information about his whereabouts, and immigration authorities get a second bite at the apple to intercept and consider this alien's merit to enter the country. Fifth, Congress might have wanted to punish lawful permanent residents who repaid that status with a life of crime and to require them to self-deport before the general considers their request for a hardship waiver. So the rational basis being that you have a serious criminal conviction, an aggravated felony, that individual goes outside the United States, and then they could be kept outside of the United States unless they get this waiver, or if they manage to fly under the radar and avoid detection for their serious criminal conviction. Why would you ever apply for a 212H waiver if you've flown under the radar? In other words, you get convicted 13 years ago, but you've never gotten a letter from Homeland Security. Why would you say, maybe I'll apply for a waiver of that now, so then I'll leave the country and try to get back in. Why would you do that? Well, because eventually if you want any kind of benefit, in this case a naturalization application, you have to get that conviction waived. Unless, of course, there are any further questions, my time is up. Thank you, Mr. Remnitz. Mr. Lattimore? You've reserved three minutes. Just as a point of clarification, if you're ever convicted of an aggravated felony, you're statutorily barred from ever receiving naturalization. A waiver doesn't cure it. 212C didn't use to cure it, and 212H doesn't cure it either. So that wouldn't be a rational basis. I mean, I read over the five rational basis as well. To me, they mostly sound pretextual. I mean, the real difference here is that you're in the country or you're out of the country. The guy that goes on vacation and comes back and gets caught at the border, they don't send him back to Jamaica and wait for some sort of application to be processed or the waiver to be processed or whatever else. What do they do? Typically they'll parole them into the country. Which is technically not admission. So technically you're not in the country or in a bubble within the country, but once again you're in the country. So there's some of these rational basis suggestions where, oh, the person has to leave and stay outside and wait to get permission to come back. I mean, that's not really what happens. The person goes on vacation, they come back, get stopped at the border, they get placed in removal proceedings, just like Mr. Sebersod. They have to go before an immigration judge, just like Mr. Sebersod. They have to submit a bunch of paperwork and documentation, just like Mr. Sebersod. You don't get more information, which was one of the rational basis. What doesn't he have to do? He doesn't have to seek an adjustment of status? That's the big deal, yeah. And I mean, that is a big deal, as you can see, because it wouldn't just be divorce. I mean, it could be death or things completely out of your control that could all of a sudden change one person. Death can be included in things completely out of your control. So, yeah, I mean, I read over the five rational basis as well. And the panel brought up most of my counterarguments to those. I mean, it really doesn't . . . There really isn't . . . It's pretextual. I mean, there really isn't a difference. One person goes on vacation and gets caught, and one person happens to get caught here, and there's this whole extra, very big, expensive additional requirement that doesn't add anything on top of the 212H. Like I mentioned before, it's not more difficult to get adjustment of status. It's more difficult to have a waiver approved. But the equal protection argument is between somebody in your client's circumstance, excuse me, and somebody, his so-called twin brother, who goes out and comes back. What about the person from Jamaica who's simply coming in? Is that what . . . Well, they haven't been afforded lawful permanent residency. Right, right, right. So you could apply different standards to that person. They've never been in the United States before. They've never lived here permanently before. But, I mean, they would . . . The process there is different. They apply for a visa through the National Visa Center. But they're not involved in your analysis. That's correct. Yeah. Thank you, Mr. Latimore. Thank you both. Helpful arguments. We'll reserve decision.